**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANTHEM HEALTH PLANS OF NEW HAMPSHIRE, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>*Defendant*. | ) | Civil Action No. |

**COMPLAINT AND PETITION TO CONFIRM AND ENFORCE IDR AWARDS**

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "SpecialtyCare") bring this action against Defendant Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") and allege as follows:

**PRELIMINARY STATEMENT**

1. This case concerns what happens when the No Surprises Act ("NSA") has done exactly what Congress designed it to do, except for the last step: the health insurer's payment to the provider. Congress enacted the NSA to protect patients from certain surprise out-of-network ("OON") medical bills by restricting what providers may collect from patients, requiring health plans and insurers to pay those noncontracted providers directly, and creating a federal process for resolving disputes over the amount owed. SpecialtyCare and Anthem completed that process. Private and federally certified neutrals, known as certified independent dispute resolution ("IDR") entities, resolved their payment disputes and issued awards in SpecialtyCare's favor. Federal law makes those awards "binding upon the parties involved" and commands that the resulting payment

"shall be made directly" to SpecialtyCare within 30 days. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6).[1]

2. Anthem has not paid. The awards identified in Exhibit A remain unpaid. After crediting payments SpecialtyCare has identified to date, approximately $138,953 remains outstanding (the "Unpaid IDR Balance"). SpecialtyCare brings this action to enforce those awards and recover the payments federal law requires.

3. SpecialtyCare is not asking this Court to decide what its services are worth. It does not ask the Court to select between competing payment offers, reconsider the evidence submitted in IDR, or otherwise revisit the merits of any awards. Congress assigned that task to the certified IDR entities. They resolved it. The only remaining question is whether Anthem must honor the result.

4. Anthem cannot convert a statutorily binding award into a voluntary recommendation by refusing to pay it. Courts have divided over the available judicial mechanism, but some have recognized a narrow confirmation proceeding that accepts the IDR award as given rather than reviewing its merits, and others have recognized a private right of action to obtain the payment Congress required.[2] SpecialtyCare asserts those theories here.

---

[1] The NSA made materially parallel amendments to the Public Health Service Act, the Employee Retirement Income Security Act ("ERISA"), and the Internal Revenue Code. *See* 42 U.S.C. § 300gg-111; 29 U.S.C. § 1185e; 26 U.S.C. § 9816. For the services implicated here, those provisions impose materially the same direct-payment, IDR, binding-effect, and post-award payment requirements. For readability, this Complaint generally cites the Public Health Service Act codification unless the statutory source matters to a particular claim. The ERISA counts cite ERISA because there the statutory source is independently material.

[2] *See Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 226–29 (D. Conn. 2025) (recognizing a provider action to enforce unpaid IDR awards); *PHI Health, LLC v. Optimum Choice, Inc.*, 826 F. Supp. 3d 654, 663–68 (D. Md. 2026) (same); *SpecialtyCare, Inc. v. CareFirst of Md., Inc.*, No. 1:25-cv-00130-ABA, 2026 WL 1656946, at *2 (D. Md. June 9, 2026) (following *PHI Health*); *Shareef Jandali Plastic Surgery LLC v. Cigna Health & Life Ins. Co.*, No. 3:25-cv-01168 (JCH), 2026 WL 2098149, at *5 (D. Conn. July 21, 2026) (recognizing private

5. SpecialtyCare first asks the Court to perform the narrow task necessary to give the awards legal effect: confirm the binding awards, account for payments already credited, and enter judgment for the Unpaid IDR Balance. That summary confirmation does not ask the Court to review the merits of the awards or to decide anew what Anthem owes.

6. Alternatively, the NSA itself creates an enforceable right to the payment Congress made mandatory and/or the awards are confirmable under § 9 of the Federal Arbitration Act ("FAA").

7. The claims involving group health plans provide additional grounds for relief. Congress enacted the NSA in part by amending the Employee Retirement Income Security Act of 1974 ("ERISA") itself. ERISA § 716 requires the applicable plan to pay the nonparticipating provider directly, incorporates the federal IDR process, makes the resulting award binding, and requires payment within 30 days. SpecialtyCare therefore invokes ERISA's express civil-enforcement provisions as well.

8. SpecialtyCare brings those ERISA claims principally in its own right as a statutory "beneficiary" because the governing ERISA § 716 designates the noncontracted provider as the person entitled to receive the plan payment. 29 U.S.C. §§ 1002(8), 1185e. The injury alleged is SpecialtyCare's nonreceipt of that payment. SpecialtyCare also relies, where applicable, on patient

---

enforcement); *Agag v. Cigna Health & Life Ins. Co.*, No. 3:25-cv-00498 (SRU), 2026 WL 1021213, at *9–15 (D. Conn. Apr. 15, 2026) (recognizing confirmation-style enforcement). *But see Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 274–77 (5th Cir. 2025); *East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Insurance Co.*, 2026 WL 2751786 (2d Cir. Sept. 17, 2026). The issues raised here are also pending in several courts of appeals, including *SpecialtyCare, Inc. v. Aetna Inc.*, No. 26-1114 (3d Cir.); *SpecialtyCare, Inc. v. Health Care Service Corp.*, Nos. 26-2269, 26-2279 & 26-2280 (7th Cir.); and *SpecialtyCare, Inc. v. Kaiser Foundation Health Plan, Inc.*, No. 26-4722 (9th Cir.).

assignments of their rights to payment and benefits to SpecialtyCare, as an independent derivative basis for beneficiary status.

9. SpecialtyCare pleads its federal theories in the alternative under Federal Rule of Civil Procedure 8(d). It seeks one recovery of the Unpaid IDR Balance and not duplicative relief. Whether relief comes directly through summary confirmation, an action under the NSA, FAA confirmation, ERISA, or through another pleaded federal mechanism, the point is the same: the payment dispute has already been resolved; what remains is payment.

## PARTIES

10. SpecialtyCare, Inc. is a Delaware corporation with its principal place of business in Brentwood, Tennessee. Remote Neuromonitoring Physicians, PC is a Pennsylvania professional corporation with its principal place of business in Brentwood, Tennessee. Sentient Physicians, PC is an Illinois professional corporation with its principal place of business in Brentwood, Tennessee.

11. SpecialtyCare and its affiliated professional entities provide intraoperative neuromonitoring and related healthcare services throughout the United States.

12. Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross and Blue Shield is a New Hampshire corporation with its principal place of business in New Hampshire.

13. Depending on the claim, Anthem either issued the relevant health coverage or administered benefits for a self-funded group health plan. In either capacity, Anthem participated on the payor side of the federal IDR proceedings at issue and was responsible for making or causing the resulting payments to SpecialtyCare.[3]

---

[3] Anthem's precise role differs across the claims. For insured claims, Anthem acts as the issuer. For claims involving self-funded ERISA plans, Anthem acts as claims administrator or in another representative capacity for the plan. SpecialtyCare uses "Anthem" when describing Defendant's conduct generally and distinguishes those roles where they matter to a particular claim.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because SpecialtyCare asserts claims arising under federal law, including the NSA and ERISA. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. The Court also has jurisdiction over SpecialtyCare's ERISA claims under 29 U.S.C. § 1132(e)(1).

15. SpecialtyCare pleads its FAA claim in the alternative. This Court has original jurisdiction over SpecialtyCare's NSA and ERISA claims and supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claim that may not satisfy the amount in controversy requirement and over the alternative FAA claim because all arise from the same IDR proceedings, awards, and failures to pay.

16. This Court has personal jurisdiction over Anthem because Anthem is incorporated in New Hampshire and maintains its principal place of business in New Hampshire.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) because Anthem resides in this District. Venue is independently proper for SpecialtyCare's ERISA claims under 29 U.S.C. § 1132(e)(2).

## THE FEDERAL STATUTORY FRAMEWORK

### A. Congress Took Patients Out of OON Payment Disputes and Routed Those Disputes to Providers and Payors.

18. Before the NSA, when an OON provider treated a health plan's member, the health plan unilaterally determined what, if anything, it would pay for the provider's services. Because there was no contract between the provider and the payor establishing the reimbursement rate, when the payor underpaid on the claim, the provider was often left to seek reimbursement from the patient for the amount remaining. And because the payors' allowed amounts routinely fell short

of the provider's billed charges, the patient was often exposed to unexpected, and sometimes substantial, "balance bills."

19. Congress enacted the NSA to change that payment dynamic. As part of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2757–90 (2020), Congress protected patients by sharply limiting what OON providers may collect from them. For healthcare services governed by the Act, providers may no longer look to the patient for the unpaid balance and may not hold the patient liable for amounts exceeding the cost sharing obligations prescribed by federal law. *See, e.g.*, 42 U.S.C. §§ 300gg-131, 300gg-132.

20. But Congress did not simply take away providers' ability to recover amounts greater than the patients' cost-sharing obligations. It replaced that remedy with a new federal payment regime directed at the health plan. That was the NSA's fundamental bargain: the patient is removed from the payment dispute, the provider must look to the plan or insurer for compensation, and the plan or insurer, in turn, "shall" make the payment Congress requires directly to the provider. *See* 42 U.S.C. § 300gg-111(a)(1)(C)(iv), (b)(1)(C)–(D). Thus, where providers once could pursue patients for amounts left unpaid by their health plans, the NSA now requires the payment dispute to be resolved between providers and payors at IDR.

21. For the services at issue here, the NSA requires the applicable group health plan or health insurance issuer to make an initial payment or provide notice of denial within the statutory period and to "pay[] a total plan or coverage payment directly to" the nonparticipating provider. 42 U.S.C. § 300gg-111(a)(1)(C)(iv), (b)(1)(C)–(D).[4]

---

[4] The claims in this action arise under NSA provisions imposing materially parallel payment requirements in the qualifying service settings implicated here. *See* 42 U.S.C. § 300gg-111(a)(1)(C)(iv), (b)(1)(C)–(D). Rather than repeatedly divide the claims by statutory service category, this Complaint refers collectively to the NSA's direct-payment obligation and the "total plan or coverage payment."

22. When the provider and payor disagree about the amount of that payment, the NSA provides the mechanism for resolving the dispute. Either party may initiate a 30-business-day open-negotiation period. *Id.* § 300gg-111(c)(1)(A). If negotiations do not resolve the dispute, either party may timely initiate federal IDR. *Id.* § 300gg-111(c)(1)(B).

**B. Congress Created Federal IDR to Resolve the Payment Dispute.**

23. IDR places the disputed payment amount before an independent, federally certified decisionmaker. Each party submits a payment offer and permitted supporting information. *Id.* § 300gg-111(c)(5)(B). The certified IDR entity considers the parties' submissions under the governing federal standards and selects one of the competing offers. *Id.* § 300gg-111(c)(5)(A), (C).

24. Where federal IDR supplies the applicable payment methodology and the parties have not otherwise agreed on an amount, the amount selected through IDR supplies the OON rate used to calculate the total plan or coverage payment. *See id.* § 300gg-111(a)(3)(K)(ii)(II). IDR therefore resolves the disputed payment amount before an enforcement action like this one begins.

25. Congress prescribed the effect of that decision in unmistakable terms. A certified IDR entity's award "shall be binding upon the parties involved," absent a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity. *Id.* § 300gg-111(c)(5)(E)(i)(I). The award also "shall not be subject to judicial review" except in a case described in 9 U.S.C. § 10(a)(1)–(4). *Id.* § 300gg-111(c)(5)(E)(i)(II).

26. Congress then imposed a separate obligation to pay. The resulting total plan or coverage payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." *Id.* § 300gg-111(c)(6). The implementing regulation likewise requires the applicable amount to "be paid directly" no later than 30 calendar days after the IDR awards issue. 45 C.F.R. § 149.510(c)(5)(ix).

27. The statutory sequence leaves no further rate decision for the losing payor. The parties dispute the amount. The IDR entity decides it. The award is binding. Payment follows within 30 days.

28. SpecialtyCare seeks to enforce that sequence, not reopen it. This Court need not decide whether any certified IDR entity selected the better offer or correctly weighed the parties' submissions. SpecialtyCare asks the Court to accept the awards as rendered and give them the effect Congress prescribed.

**C. The Same Requirements Apply Through ERISA.**

29. Congress placed materially parallel NSA requirements inside ERISA itself. *See* 29 U.S.C. § 1185e. ERISA § 716 requires the applicable group health plan to make the total plan payment directly to the nonparticipating provider, establishes the federal negotiation and IDR process, makes the resulting award binding, and requires the resulting payment within 30 days. *Id.* § 1185e(a)(1)(C)(iv), (b)(1)(C)–(D), (c)(1), (5)(E), (6).

30. That matters because ERISA provides its own express civil remedies. Section 502(a)(1)(B) authorizes a "participant or beneficiary" to recover benefits due under a plan and to enforce rights under the plan. 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) separately authorizes a "participant, beneficiary, or fiduciary" to obtain appropriate equitable relief to redress violations of ERISA or to enforce "any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3).

31. ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). SpecialtyCare satisfies both alternatives for the ERISA-governed claims.

32. First, ERISA itself requires the applicable plan payment to be made directly to the nonparticipating provider. *See id.* § 1185e(a)(1)(C)(iv)(II), (b)(1)(D). Those substantive

requirements govern the obligations of the plan and the terms on which it must operate.[5] SpecialtyCare furnished the services and is the provider whom the governing ERISA provisions designate to receive the payment.

33. Second, the affected patients separately assigned SpecialtyCare their rights to payment and benefits. Those assignments independently designate SpecialtyCare to receive and enforce the assigned benefits. SpecialtyCare therefore brings its ERISA claims both in its own right as a beneficiary and derivatively as an assignee-beneficiary.

## FACTUAL ALLEGATIONS

### A. SpecialtyCare's Intraoperative Neuromonitoring Services.

34. The claims at issue arise from SpecialtyCare's provision of intraoperative neuromonitoring ("IONM"), a clinical service that provides real-time information about the functioning of a patient's nervous system while surgery is underway.

35. During operations that place the brain, spinal cord, nerves, or related neural structures at risk, IONM uses electrophysiologic techniques to monitor whether those structures continue to function as expected. Depending on the procedure, the monitoring may use somatosensory evoked potentials, motor evoked potentials, electromyography, electroencephalography, or combinations of those modalities. Trained neurophysiology professionals acquire and monitor the signals, while qualified physicians supervise and interpret the monitoring.

---

[5] SpecialtyCare's direct-beneficiary theory does not depend on treating the IDR award itself as a plan term. ERISA § 716 supplies the plan's direct-payment obligation; the IDR award fixes the OON-rate component used to calculate the payment after the federal payment framework applies. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring plan fiduciaries to act in accordance with plan documents only "insofar as" those documents are consistent with ERISA); *see also Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 750 (2004) (explaining that a federal statutory rule regulating the substantive content of ERISA plans can add a mandatory term to covered plans).

36. The timing is critical. IONM is not merely a diagnostic study performed after surgery to determine whether an injury occurred. A meaningful change in neurophysiologic signals can alert the operating team to a potential change in neural function while the procedure is still underway. The team can then investigate and, where appropriate, alter the surgical approach, anesthesia, patient positioning, or other operative conditions while there may still be an opportunity to avoid or mitigate injury.

37. SpecialtyCare furnished the IONM services associated with the claims identified in Exhibit A as a nonparticipating provider. Those services fell within the NSA's federal coverage-and-payment framework. Anthem issued or administered the relevant health benefits, and no negotiated network rate between SpecialtyCare and Anthem governed the disputed payments.

**B. SpecialtyCare and Anthem Completed the Federal IDR Process.**

38. SpecialtyCare submitted claims seeking payment for the services it furnished. Anthem made payments SpecialtyCare disputed as insufficient, denied payment, or otherwise failed to pay the amount SpecialtyCare contended was required. SpecialtyCare invoked the NSA's open-negotiation process and, when negotiation did not resolve the disputes, initiated federal IDR.

39. Anthem participated on the payment side of each IDR proceeding identified in Exhibit A. Anthem received notice of the proceedings and had the opportunity to submit its own payment offers, information, and arguments. Certified IDR entities thereafter issued awards in SpecialtyCare's favor.

40. Anthem participated in the federal IDR process, asked the certified IDR entities to resolve the payment disputes in its favor, and accepted IDR as the mechanism for conclusively resolving those disputes.

41. Exhibit A identifies those awards, the federal IDR dispute number, the award date, the award amount, payments credited to date, and the remaining balance owed.[6]

42. The 30-day federal payment deadline has expired for every amount included in the Unpaid IDR Balance. Anthem nevertheless has not paid the awards in full. After crediting payments presently known to SpecialtyCare, approximately $138,953 remains unpaid.

**C. Anthem Administered the ERISA-Governed Claims.**

43. A subset of the awards identified in Exhibit A involves, upon information and belief, self-funded group health plans governed by ERISA. SpecialtyCare's ERISA claims are limited to those awards.

44. For those claims, Anthem served as claims administrator or otherwise exercised responsibility for administration of the relevant plan benefits. Anthem handled the underlying claims, acted for or on behalf of the applicable plans in the federal payment process, received the IDR awards, and, upon information and belief, had responsibility for making or causing the resulting plan payments.

45. SpecialtyCare itself qualifies as a beneficiary for those claims because ERISA requires the applicable plan to make its payment directly to the nonparticipating provider furnishing the covered services. 29 U.S.C. §§ 1002(8), 1185e(a)(1)(C)(iv)(II), (b)(1)(D). The patients also separately assigned SpecialtyCare their rights to payment and benefits. SpecialtyCare therefore invokes ERISA both directly and derivatively.

---

[6] SpecialtyCare has not attached every underlying IDR award to this public pleading because the awards are numerous and associated claim materials contain patient information. Anthem participated on the payment side of the proceedings and received the awards when issued. SpecialtyCare will produce the awards in this action and, when necessary, submit them to the Court subject to appropriate privacy protections.

46. Upon information and belief, Anthem exercised discretionary authority or responsibility over aspects of the relevant claims administration and/or exercised authority or control over the processes through which plan assets were used to pay covered claims. The precise allocation of those functions is reflected in plan documents, administrative-services agreements, funding arrangements, claims-payment procedures, and related materials principally within Anthem's and the plan sponsors' possession.

47. By the time the payments at issue became due, however, the federal payment disputes had ended. If Anthem's remaining role was ministerial, no discretion remained to substitute a different payment amount for the amount fixed through IDR. If Anthem instead exercised discretionary authority over whether or how the awards would be recognized and implemented, or exercised authority or control over plan assets from which benefits were payable, ERISA governed that exercise of authority.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

## PETITION FOR SUMMARY CONFIRMATION AND ENFORCEMENT OF BINDING IDR AWARDS UNDER THE NSA

48. SpecialtyCare incorporates the preceding paragraphs by reference.

49. SpecialtyCare seeks a summary order confirming and enforcing the binding IDR awards identified in Exhibit A. That relief does not require the Court to recognize a damages cause of action or to judicially review the merits of any IDR award. Federal law has already supplied the adjudicative process, the decisionmaker, the amount of payment, the binding effect of the resulting award, and the deadline for payment. What remains is a narrow action to give those awards the legal effect Congress assigned.

50. A prevailing provider may obtain a narrow confirmation-style judgment giving effect to an award that the NSA already makes binding. *See Agag v. Cigna Health & Life Ins. Co.*, No. 3:25-cv-00498 (SRU), 2026 WL 1021213, at *9–15 (D. Conn. Apr. 15, 2026).

51. The requested relief is ministerial in substance. The certified IDR entities resolved the payment disputes. Their awards are binding. The statutory payment deadlines have passed. SpecialtyCare does not ask the Court to determine the appropriate OON rate, reconsider the parties' submissions, or decide whether the certified IDR entities reached the correct result. The Court need only accept the awards as rendered, account for payments already credited, and enter judgment for the outstanding balance.

52. Upon information and belief, none of the awards identified in Exhibit A have been vacated, modified, or set aside on any ground described in 9 U.S.C. § 10(a)(1)–(4).

53. SpecialtyCare therefore is entitled to an order confirming and enforcing the awards and entering judgment for the Unpaid IDR Balance, subject to credit for later payments, together with applicable interest.

## COUNT II

## PRIVATE RIGHT OF ACTION TO ENFORCE THE NSA'S MANDATORY PAYMENT OBLIGATION (42 U.S.C. § 300gg-111(c)(5)(E), (c)(6))

**(*Pleaded in the Alternative*)**

54. SpecialtyCare incorporates the preceding paragraphs by reference and pleads this Count in the alternative.

55. Congress made each IDR award identified in Exhibit A binding upon the parties and required the resulting payment to be made directly to SpecialtyCare within 30 days. 42 U.S.C.

§ 300gg-111(c)(5)(E)(i)(I), (c)(6). The statute identifies who must pay, to whom payment must be made, how the disputed amount is determined, and when payment is due.

56. Those provisions give SpecialtyCare a right to enforce the payment obligation. Congress protected patients from the disputed OON balance, placed the corresponding payment responsibility on plans and issuers, directed payment to the provider, supplied a federal process to resolve the disputed amount, and made the resulting award binding. The provider's entitlement does not disappear once it wins that process.

57. Judicial enforcement gives effect to the award without reviewing its merits. Courts applying the NSA have recognized a provider action to enforce unpaid awards on that basis. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 226–29 (D. Conn. 2025); *PHI Health, LLC v. Optimum Choice, Inc.*, 826 F. Supp. 3d 654, 663–68 (D. Md. 2026); *SpecialtyCare, Inc. v. CareFirst of Md., Inc.*, No. 1:25-cv-00130-ABA, 2026 WL 1656946, at *2 (D. Md. June 9, 2026); *Shareef Jandali Plastic Surgery LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-CV-1168, 2026 WL 2098149, at *5 (D. Conn. July 21, 2026); *Northeast Plastic Surgery Center, LLC v. Cigna Health & Life Insurance Co.,* No. 3:25-CV-1476, 2026 WL 2098146, at *5 (D. Conn. July 21, 2026); *New England PA, LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-CV-1472, 2026 WL 2099041, at *5 (D. Conn. July 21, 2026).

58. Anthem failed to make the payments required by the binding awards. SpecialtyCare is entitled to judgment enforcing the awards identified in Exhibit A and requiring payment of the Unpaid IDR Balance, subject to credit for later payments, together with prejudgment interest to the extent permitted by law and post-judgment interest under 28 U.S.C. § 1961.

## COUNT III

**PETITION TO CONFIRM BINDING IDR AWARDS**
**UNDER § 9 OF THE FEDERAL ARBITRATION ACT**
**(9 U.S.C. § 9)**

**(*Pleaded in the Alternative*)**

59. SpecialtyCare incorporates the preceding paragraphs by reference and pleads this Count in the alternative.

60. Federal IDR is a binding adjudicative process in which an independent decisionmaker receives competing payment offers and supporting information from adverse parties, applies federal standards, and issues a final award resolving the disputed payment amount. Congress expressly made those awards "binding upon the parties involved" and incorporated the grounds set forth in 9 U.S.C. § 10(a)(1)–(4) as the exceptional circumstances in which judicial review may occur. 42 U.S.C. § 300gg-111(c)(5)(E)(i). SpecialtyCare contends that those features make the awards confirmable under § 9 of the FAA.

61. Section 9 ordinarily requires an agreement that an arbitration award may be reduced to judgment. That requirement developed in cases involving consensual arbitration created by private contract. Federal IDR is different. Congress itself mandated the binding adjudicative process, made the resulting awards binding, and expressly incorporated the grounds in 9 U.S.C. § 10(a)(1)–(4) as the only circumstances in which judicial review may occur. SpecialtyCare therefore contends that no separate private arbitration agreement is necessary because Congress itself mandated this binding adjudicative process and made the resulting awards binding. In the alternative, if § 9 requires an agreement between these parties, Anthem expressly and/or impliedly agreed to arbitrate through its communications and conduct.

62. Anthem participated in the IDR proceedings and sought awards in its favor. Upon information and belief, Anthem selected or participated in selecting the certified IDR entity, paid

required fees, submitted payment offers, and submitted supporting information or argument. Anthem did so under a statutory regime that expressly made the resulting award binding.

63. SpecialtyCare is therefore entitled under § 9 of the FAA to an order confirming the awards identified in Exhibit A and entry of judgment for the amounts remaining unpaid.

**COUNT IV**

**DENIAL OF ERISA PLAN BENEFITS**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

**(*Pleaded in the Alternative*)**

64. SpecialtyCare incorporates the preceding paragraphs by reference.

65. This Count applies only to the awards identified in Exhibit A involving group health plans governed by ERISA.

66. ERISA § 502(a)(1)(B) authorizes a beneficiary to recover benefits due under the terms of a plan and to enforce rights under the plan. 29 U.S.C. § 1132(a)(1)(B). SpecialtyCare is a beneficiary on two independent grounds.

67. First, SpecialtyCare is itself a beneficiary under 29 U.S.C. § 1002(8). ERISA § 716 requires the applicable plan to make the payment for these qualifying services directly to the nonparticipating provider. 29 U.S.C. § 1185e(a)(1)(C)(iv)(II), (b)(1)(D). Section 716 also supplies the federal process for determining the OON rate, makes the resulting awards binding, and requires payment within 30 days. *Id.* § 1185e(c)(1), (5)(E), (6). SpecialtyCare furnished the covered services and is the provider whom ERISA § 716 require to receive that payment.

68. Second, SpecialtyCare's patients separately assigned SpecialtyCare their rights to payment and benefits. Those assignments provide an independent derivative basis for beneficiary status. SpecialtyCare therefore brings this Count both as a beneficiary in its own right and as an assignee-beneficiary.

69. The benefit SpecialtyCare seeks is the plan payment for healthcare services furnished to participants and beneficiaries. IDR did not create coverage for an otherwise uncovered service. It resolved the disputed OON rate after the claim fell within the governing federal coverage-and-payment framework. Once the certified IDR entity issued its binding award, the disputed rate component of the plan payment was fixed.

70. This is therefore not a rate dispute arising from a separate provider agreement. SpecialtyCare was nonparticipating for the claims at issue. The payment obligation arises under the ERISA-governed plans and ERISA § 716, with the binding IDR awards fixing the OON-rate component of the benefits due.

71. Anthem administered the affected claims, acted for or on behalf of the applicable plans in IDR, received the awards, and was responsible for making or causing the resulting payments. Its failure to do so denied benefits due and failed to honor SpecialtyCare's rights under the applicable plans.

72. SpecialtyCare completed the federal payment dispute process and repeatedly sought payment after obtaining binding awards. To the extent any additional plan-level administrative review requirement applies, SpecialtyCare has exhausted the remedies reasonably available to it or further review is futile.

73. SpecialtyCare is entitled under 29 U.S.C. § 1132(a)(1)(B) to recover the unpaid benefits attributable to the ERISA-governed awards and to enforce its rights to direct payment. SpecialtyCare also seeks reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

## COUNT V

### EQUITABLE ENFORCEMENT OF ERISA § 716
### ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

**(*Pleaded in the Alternative*)**

74. SpecialtyCare incorporates the preceding paragraphs by reference and pleads this Count expressly in the alternative to Count IV.

75. ERISA § 502(a)(3) expressly authorizes a beneficiary to obtain appropriate equitable relief to redress violations of ERISA and to enforce "any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA § 716 is one of those provisions. It requires the applicable plan payment to be made directly to SpecialtyCare and requires the payment resulting from IDR within 30 days. *Id.* § 1185e(a)(1)(C)(iv)(II), (b)(1)(D), (c)(6).

76. SpecialtyCare brings this Count principally in its own right as an ERISA beneficiary and, because its patient assignments encompass the statutory rights asserted here, derivatively as well. If the Court concludes that the unpaid amounts are not recoverable as "benefits due" under § 502(a)(1)(B), § 502(a)(3) independently authorizes appropriate equitable relief to enforce the requirements of ERISA § 716.

77. Anthem continues to administer claims involving SpecialtyCare, and the repeated post-IDR nonpayment alleged here threatens to recur. SpecialtyCare therefore seeks appropriate declaratory and injunctive relief requiring compliance with ERISA § 716 with respect to SpecialtyCare's qualifying ERISA claims, together with other appropriate equitable relief supported by the evidence. SpecialtyCare does not seek duplicative relief under Counts IV and V.

78. SpecialtyCare also seeks reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

## COUNT VI

**BREACH OF ERISA FIDUCIARY DUTY**
**(ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104(a), 1132(a)(3))**

**(*Pleaded in the Alternative*)**

79. SpecialtyCare incorporates the preceding paragraphs by reference and pleads this Count only to the extent Anthem performed fiduciary functions with respect to the ERISA-governed claims or payments at issue.

80. A person acts as an ERISA fiduciary to the extent it exercises discretionary authority or responsibility in plan administration or exercises authority or control over management or disposition of plan assets. 29 U.S.C. § 1002(21)(A). Upon information and belief, Anthem performed one or more of those functions for at least some of the self-funded claims at issue, including functions concerning administration of claims, implementation of payment awards, and payment of plan benefits.

81. SpecialtyCare does not allege that the purely ministerial act of transmitting a payment, standing alone, is a fiduciary act. The distinction is straightforward. If Anthem's responsibility after IDR was purely ministerial, it had no discretion to replace the amount federal law had fixed. But if Anthem exercised discretionary authority over whether or how a binding award would be implemented, or exercised authority or control over plan assets used to satisfy the benefit, ERISA governed that exercise of authority.

82. Anthem received the awards, knew that payment was due, and received repeated notice identifying the unpaid obligations. Yet the ERISA-governed awards remain unpaid in whole or in part. Upon information and belief, Anthem also failed to maintain or apply administrative processes reasonably calculated to ensure that completed IDR awards were identified, reconciled, and implemented for the plans it administered.

83. To the extent Anthem engaged in that conduct as a fiduciary, it was required to discharge its duties solely in the interests of participants and beneficiaries, for the purpose of providing benefits, with the care, skill, prudence, and diligence required by ERISA, and in accordance with governing plan documents insofar as those documents were consistent with ERISA. 29 U.S.C. § 1104(a)(1)(A), (B), (D).

84. SpecialtyCare brings this Count principally in its own right as an ERISA beneficiary and, because the applicable patient assignments encompass the relevant rights, derivatively as well. If § 502(a)(1)(B) does not provide an adequate remedy for a fiduciary injury established in this action, SpecialtyCare seeks appropriate equitable relief under § 502(a)(3), including appropriate injunctive relief, an accounting where warranted, equitable surcharge to the extent permitted by controlling law, and other appropriate equitable relief supported by the evidence.

85. SpecialtyCare seeks relief only for fiduciary conduct established through the evidence and only to the extent that relief is appropriate and nonduplicative. SpecialtyCare also seeks reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

**PRAYER FOR RELIEF**

WHEREFORE, SpecialtyCare prays for the following relief:

A. Judgment to be entered against Anthem on each claim the Court finds established;

B. Under Count I, enter an order summarily confirming and enforcing the binding IDR awards under the NSA and reduce the unpaid payment obligations to judgment;

C. Alternatively, under Count II, enforce the binding IDR awards identified in Exhibit A and enter judgment against Anthem for the Unpaid IDR Balance, subject to credit for payments received after filing;

D. Alternatively, under Count III, confirm the IDR awards identified in Exhibit A under 9 U.S.C. § 9 and enter judgment for the amounts remaining unpaid;

E. Alternatively, under Count IV, enter judgment for the unpaid benefits attributable to the ERISA-governed awards and enforce SpecialtyCare's rights to direct payment under the applicable plans, both in SpecialtyCare's own capacity as an ERISA beneficiary and, independently, in its derivative capacity as assignee;

F. Alternatively, grant appropriate equitable relief under Count V to enforce ERISA § 716, 29 U.S.C. § 1185e;

G. To the extent Anthem acted in a fiduciary capacity with respect to conduct established in this action, grant appropriate and nonduplicative equitable relief under Count VI for proven fiduciary violations;

H. Award prejudgment interest to the extent permitted by law and post-judgment interest under 28 U.S.C. § 1961;

I. Award SpecialtyCare reasonable attorneys' fees and costs with respect to its ERISA claims under 29 U.S.C. § 1132(g)(1), together with taxable costs otherwise permitted by law; and

J. For such other, further, and general relief to which SpecialtyCare may show itself entitled.

Dated: November 11, 2026.

Respectfully submitted,

*/s/ Nicole J. Cocozza*____________
Nicole J. Cocozza (NH Bar #273936)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
617-456-8053
ncocozza@princelobel.com

Joshua D. Arters (*pro hac vice forthcoming*)
Kevin T. Elkins (*pro hac vice forthcoming*)
POLSINELLI PC
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
615-252-3923
jarters@polsinelli.com
kelkins@polsinelli.com

*Counsel for Plaintiffs*